IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO.: 7:12-CV-00136-D

| | |
|---|---|
| TERRY REGAN, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant )<br>_____) | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DEs 31, 36) The time for filing any responses or replies has expired, and, therefore, the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE 38). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 31) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE 36) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for disability insurance benefits on September 24, 2008 alleging disability beginning February 22, 2003. (Tr. 90–93). His claim was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ") who,

in a decision dated August 26, 2011, determined that Plaintiff was not disabled. Id. at 10–25. The Social Security Administration's Office of Disability Adjudication and Review Appeals Council ("AC") granted Plaintiff's request for review and, on March 26, 2012, determined that the claimant was not disabled, making its decision the final decision in this matter. *Id.* at 1–6. Plaintiff appealed that decision to this Court on May 23, 2012 (DE 1-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary."

2

Case 7:12-cv-00136-D   Document 39   Filed 08/20/13   Page 2 of 19

*Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

**<u>Analysis</u>**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his injury onset date, January 1, 1997. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: multiple arthralgias; asthma; history of coronary artery disease; hypertension; diabetes mellitus; right eye blindness; degenerative joint disease in the left knee; obesity; depression; personality disorder; and a history of poly-substance abuse. *Id*. at 16. However,

the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the sedentary work with additional limitations. *Id*. These limitations include findings that claimant is limited to occasional climbing of ramps or stairs but no climbing of ladders, ropes or scaffolds; he can only occasionally balance, stoop, kneel, crouch or crawl; he must avoid concentrated exposure to temperature extremes; can perform no overhead reaching with both upper extremities; he is limited to simple, routine, repetitive tasks; he is blind in the right eye; he must avoid even moderate exposure to hazards, such as unprotected heights and dangerous moving machinery; and avoid concentrated exposure to pulmonary irritants such as fumes, dusts, gasses and poor ventilation. *Id*. at 17. Considering Plaintiff's age, education, work history and RFC, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff was capable of performing. *Id*. at 24. Accordingly, the ALJ determined that Plaintiff had not been under a disability during the relevant time period. *Id*. at 25.

After granting a request for review, the AC adopted the ALJ's findings and conclusions as to whether Plaintiff is disabled. *Id*. at 4. However, the AC noted its disagreement with the ALJ's findings regarding Plaintiff's mental disorders, wherein the ALJ concluded has moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation each of extended duration. *Id*. at 5.

Specifically, the AC noted that this finding contained no rationale and no reference to the record and, consequently, it was unclear how this determination was reached. *Id*. In considering the effects of Plaintiff's mental impairments on his functional ability, the AC found the Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation each of extended duration. *Id*.

Upon consideration of the entire record, the AC found that Plaintiff had no past relevant work experience; that he was capable of performing sedentary work with the provisos listed by the ALJ; that Plaintiff's subjective complaints were not fully credible; that, based on his age, education, work experience and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform and, therefore, he is not disabled as defined by the Act. *Id*. at 5–6.

Plaintiff's contends that there is no substantial evidence supporting the ALJ's decision. Specifically, he asserts that the ALJ disregarded the treating physician rule; failed to properly evaluate both subjective and objective evidence of pain; failed to include all limitations in assessing Plaintiff's RFC; erred in finding Plaintiff not fully credible; and erred in relying on the Vocational Expert's ("VE's") testimony that Plaintiff could perform other work when the VE had not reviewed Plaintiff's medical records prior to the hearing.[1]

---

[1] The medical evidence of record has been carefully laid out in the ALJ's decision as well as in the parties' briefs. Accordingly, it will not be reiterated herein except where it is required to address the issues raised presently.

*1. Has Plaintiff demonstrated a severe impairment?*

Plaintiff first contends that the ALJ failed to properly evaluate his Methicillin-resistant Staphylococcus Aureus ("MRSA") diagnosis which, he contends, was a severe impairment. However, as noted by both the ALJ and the Defendant, the record lacks evidence that this condition was expected to last, or did last, more than 12 months. The ALJ noted that the medical records reflect that Plaintiff was successfully treated for MRSA from October 28, 2010 to November 30, 2010. *Id*. at 15. Accordingly, the MRSA does not constitute a severe impairment under the Act.

*2. Do his impairments meet or medically equal one of the Listings?*

Plaintiff next contends that the ALJ erred in finding that he did not have a combination of impairments that met or medically equaled a Listed impairment. He asserts that the ALJ failed to consider his MRSA and pain symptoms in making the disability determination. As noted above, the record lacks support for concluding that the MRSA is a severe impairment. Moreover, without citing to the medical evidence in the record, it is unclear which Listing Plaintiff contends he meets. The ALJ specifically concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" *Id*. at 16. In making this finding, the ALJ discussed that Plaintiff's obesity may exacerbate his pain or other symptoms, but that it did not rise to the level of a listed impairment. *Id*. Accordingly, this argument lacks merit. Nonetheless, the ALJ considered the complaints of pain in his RFC assessment. *Id*.

*3. Plaintiff's RFC*

At Step 4, the ALJ determines the claimant's RFC. This requires the ALJ to evaluate a claimant's ability to do sustained work-related physical and mental activity on a regular basis. In making this finding, the ALJ considers the functional limitations from medically-determinable impairments. Thus, when the medical evidence shows a limitation, the ALJ must factor that into the RFC assessment.

### A. Medical Opinions

#### (*I*) *Treating Physicians*

Plaintiff maintains that the ALJ failed to following the treating physician rule, which affords a certain amount weight to the opinions of treating physicians. He argues it was the ALJ erred in failing to properly weigh opinions as to his MRSA and cardiac problems, as well as opinions offered and other medical sources and, instead, afforded great weight to the opinions of non-treating physicians, who opined he could work.

"[W]hile an ALJ may not reject medical evidence for no reason or the wrong reason . . . an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id*. (internal citations omitted). "[T]he treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by

7

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro*, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 1999 WL 7864, at *2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following non-exclusive list: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship between the physician and the claimant; 3) the supportability of the physician's opinion; 4) the consistency of the opinion with the record; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5. *See also Farrior v. Astrue*, 2011 WL 3157173, at *4 (E.D.N.C. June 1, 2011).

Defendant contends, and the Court agrees, that Plaintiff has failed to demonstrate specifically how the treating physicians' opinions are inconsistent with the RFC finding that Plaintiff was capable of performing sedentary work with restrictions. The records includes the following relevant medical evidence:

First, Plaintiff was admitted to Duke Hospital on two (2) occasions and his condition improved. The restrictions placed on him, *to wit.*, that he do no heavy lifting, pushing or pulling but that he gradually increase his activity, are consistent with his RFC. *Id.* at 21; 1289.

Following knee surgery in March, 2008, Plaintiff did not see Dr. Gerber for further treatment after May, 2008. His restrictions on squatting and kneeling have been incorporated into Plaintiff's RFC. *Id.* at 21; 501–06.

Dr. Allen examined Plaintiff for knee and back pain on only one occasion, for which he administered a single back injection for pain. *Id.* at 1264–66. He found that Plaintiff had a full range of motion ("ROM") in all joints except he left hip, where he had a good ROM. He opined that Plaintiff could perform acts as tolerated. *Id.* Plaintiff fails to identify how Dr. Allen's assessment is inconsistent with his RFC. *Id.* at 21.

Dr. Kumar diagnosed Plaintiff with acute kidney disease and renal failure in November, 2010. *Id.* at 1304–06. However, Dr. Kumar noted that this issue was resolved. *Id.* at 1304. Accordingly, this medical opinion does not contradict the ALJ's findings regarding Plaintiff's RFC.

9

Case 7:12-cv-00136-D   Document 39   Filed 08/20/13   Page 9 of 19

Plaintiff was also seen by Robeson Health Care Center. *Id*. at 547–628; 1170–73; 1243–49. Defendant notes that Plaintiff often presented for routine blood pressure checks and prescription medication refills, and that he frequently reported little or no pain. *Id*. When he was complaining of pain, treatment with Tylenol or Darvocet was suggested. *Id*. at 547, 550. In those instances where Plaintiff was compliant with medication, his symptoms appeared to be controlled. *Id*. at 560. Plaintiff fails to identify any specific limitation from acceptable medical sources at RHCC that contradicts his RFC. *Id*. at 18–21.

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence from treating sources. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

### *(ii) Consultative Examiners*

Plaintiff also takes exception with the weight afforded to the opinions of consultative examiners Drs. Meltzer and Izurieta as well as state agency examiners, Drs. Farley and Wax. Regardless of the source, every medical opinion received must be evaluated. 20 C.F.R. § 404.1527(c). Generally, the opinions of an examining and treating sources are given more weight than to the opinions of non-examining and non-treating sources. *Id*. Such opinions may only be given weight "insofar as [they are] supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency

10

medical . . . consultant." S.S.R. 96–6p.

In this case, the ALJ concluded that the findings and opinions of Drs. Meltzer and Izurieta were "given great weight due to their general consistency with the record as a whole[.]" *Id*. at 23. Similarly, the opinions of Drs. Farley and Wax were "accorded great weight . . . as their findings [were] generally consistent with the record as a whole. *Id*. These opinions included determinations that: Plaintiff would benefit from vocational rehabilitation to find non physical-labor jobs that he might be able to do and that he has the intellect to do so, *id*. at 1182; that his main problems were cardiac-related and that his blood pressure was fairly controlled, *id*. at 1202; and that he had moderate restrictions in Paragraph B criteria, *id*. at 193.

Plaintiff has not identified any specific portion of the record where the findings are inconsistent with the opinions of these sources nor identify how such sources contradict the assessments of treating sources. The conclusions contained in both treating and non-treating records are consistent with ALJ's findings that Plaintiff is capable of sedentary work with limitations. Consequently, Plaintiff has failed to establish that the ALJ failed to proper;ly weigh the medical evidence of record.

### B. Credibility

Plaintiff contends that the ALJ incorrectly assessed his credibility. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

The regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); *Craig*, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); *Craig*, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See Craig*, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, at *4. Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id*. at *2.

12

Plaintiff takes exception with the ALJ's assessment that he was not fully credible. He alleges that his impairments cause problems, including pain, difficulty walking and exertional issues, which impede his ability to perform activities of daily living. The ALJ found that although his medically-determinable impairments could reasonably be expected to cause the symptoms he alleges, Plaintiff was not fully credible as to the intensity, persistence and functionally-limiting effects of his symptoms. The ALJ determined that Plaintiff's testimony was inconsistent at times when, for example, he testified that his impairments impinged on his ability to shower, dress and work, but stated that he had no assistance in performing these daily activities. Additionally, he related to a physician that he had not used cocaine in several years, yet tested positive for it in more recent records.

The ALJ noted that "the successful, often relatively conservative nature of his treatment . . . has not prevented him from performing relatively short jobs" which "is consistent with his current ability to work within his [RFC]." *Id.* at 18. The ALJ also found that the record contained instances where Plaintiff was non-compliant with treatment as well as many instances where Plaintiff had responded well to treatment. *Id.* Thus, neither the medical evidence of record nor, in some instances, Plaintiff's own statements, support the level of limitation he claims.

The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Consequently, the ALJ's determination about Plaintiff's credibility will be afforded the deference due to it. Accordingly, this assignment of error is without merit.

13

### C. Combined effects of impairments

When a claimant has more than one impairment the ALJ must consider the combined effect of these impairments in determining a plaintiff's disability status. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Whether or not the impairments are found to be severe, the ALJ must consider the severe and nonsevere complaints and impairments in combination in determining the Plaintiff's disability. *Mazyck v. Astrue*, 2012 WL 315648, at *2 (D.S.C. February 1, 2012). It "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity.... [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50 (citing *Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir. 1985)). When a claimant has more than one impairment the ALJ must consider the combined effect of these impairments in determining a plaintiff's disability status. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Under 20 C.F.R. § 404.1523:

> Multiple Impairments. In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Id*. *See also, Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270 (D. Md. 2003) (holding "[t]he

14

ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process."). Furthermore, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

In the present case, the ALJ found that the Plaintiff had the following severe impairments: multiple arthralgias; asthma; history of coronary artery disease; hypertension; diabetes mellitus; right eye blindness; degenerative joint disease in the left knee; obesity; depression; personality disorder; and a history of poly-substance abuse. The ALJ additionally determined that the MSRA was a non-severe impairment. *Id*. at 16. He concluded, however, that none of Plaintiff's impairments, alone or in combination, met or medically-equaled a listed impairment. However, the impairments were factored into the RFC assessment. *Id*.

The ALJ further concluded that Plaintiff's mental impairments did not satisfy the paragraph B criteria of Listings 12.04, 12.08 and 12.09, which require two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that Plaintiff has moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation each of extended duration. *Id*. at 17.

Although it stated that the ALJ's basis for this finding was unclear, in considering the effects of Plaintiff's mental impairments on his functional ability, the AC determined that Plaintiff's impairments were of lesser severity than that found by the ALJ. *Id*. at 5.

15

Specifically, the AC determined that the Plaintiff had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation each of extended duration. *Id*.

Plaintiff has not identified evidence in the record supporting his position as to the limiting effects of his impairments. Indeed, the ALJ specifically noted that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." *Id*. at 16. As such, Plaintiff argument lacks merit.

In sum, there is substantial evidence to support the ALJ's determination as to Plaintiff's RFC. Specifically, the medical evidence was properly weighed and supports a finding that Plaintiff is capable of performing sedentary work, with restrictions. Plaintiff has failed to demonstrate that the ALJ erred in finding him not fully credible. Finally, the ALJ, in making a determination as to Plaintiff's RFC, considered all impairments and limitations. Although Plaintiff may disagree with the determinations made by the ALJ, after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Craig*, 76 F.3d at 589. Thus, Plaintiff's objections to the ALJ's analysis at Step 4 are without merit.

*4. Step 5*

While a claimant has the burden at Steps 1–4, it is the Commissioner's burden at Step 5 to show that work the claimant is capable of performing is available. *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir.1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992)). At Step 5, the Commissioner must establish both that the claimant has the capacity to perform an alternative job, considering his or her age, education, skills, work experience, and physical shortcomings and also that such a job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976).

Plaintiff contends that the ALJ erred in concluding he could perform other work. He contends that the testimony of the VE is unreliable and not supported by substantial evidence because the VE had not seen or reviewed Plaintiff's medical records prior to the hearing. Plaintiff also maintains that the ALJ's hypothetical questions posed to the VE failed to include all his impairments, limitations and restrictions including those as to his walking, lifting, standing and chronic pain.

An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999)(unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations.

17

With respect to his first argument, there is no specific requirement that a VE review medical records prior to a hearing. Rather, in order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989). Instantly, the ALJ directed the VE to listen to all the testimony as a means to elicit much detail about Plaintiff's relevant history. *Id*. 41–42. He thereafter posed a detailed hypothetical that encompassed all of limitations of Plaintiff's RFC, which the ALJ specifically detailed for the VE. Accordingly, there is substantial evidence to support a finding that the VE took into account all Plaintiff's abilities and limitations in identifying jobs that he was capable of performing.

Moreover, as to the jobs available that Plaintiff was found capable of performing, the VE specifically addressed whether the positions were consistent with his restrictions on walking, lifting and standing. *Id*. at 84–86. The VE stated that all three positions — assembler, inspector, surveillance system monitor — had sit/stand options, allowing for alternation in thirty minute intervals; required either no lifting or carrying while walking (surveillance system monitor), occasional lifting of 5–10 pounds (inspector), or occasional lifting of 10 pounds (assembler). *Id.* Such restrictions were consistent with sedentary work, which generally includes lifting, carrying, pushing and/or pulling no greater than 10 pounds; sitting for up to six hours in an eight hour work day, with normal breaks; and standing and/or walking for up to two hours in an eight hour work day with normal breaks. *Id*. at 81–82.

18

Thus, Plaintiff's assignments of error with respect to the VE's testimony are without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 31) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE 36) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, August 20, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE